IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 05-cv-00597-LTB-CBS

THE WESTCOR COMPANY II LIMITED PARTNERSHIP,
FLATIRON PROPERTY HOLDING, L.L.C.,
FLATIRON SPE, L.L.C.
FLATIRON HOLDING, L.L.C., and
FLATIRON MEZZANINE, L.L.C.,

    Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY,

    Defendant.
_____

ORDER
_____

This case is before me on summary judgment motions filed by Plaintiffs The Westcor Company II Limited Partnership, FlatIron Property Holding, L.L.C., FlatIron SPE, L.L.C. FlatIron Holding, L.L.C., and FlatIron Mezzanine, L.L.C. (collectively "Westcor") and Defendant The Travelers Indemnity Company's ("Travelers"). Although separately filed and briefed, these motions raise largely the same issues and will therefore be addressed together. After consideration of the motions, related pleadings, and the case file, I grant Westcor's Motion for Partial Summary Judgment in part and deny Travelers' Motion for Summary Judgment as set forth below.

**I. Facts**

Westcor is the owner of FlatIron Crossing and The Village at FlatIron Crossing (the "Village"), two retail shopping centers located in Broomfield, Colorado. Three of the Westcor entities are Arizona Limited Liability Partnerships, and the remaining two Westcor entities are

Delaware Limited Liability Partnerships.

Westcor obtained insurance coverage from Travelers pursuant to policy number KTCMB-271T971 which went into effect December 31, 1999 (the "2000 Policy"). The 2000 Policy lists the insured's address as Phoenix, Arizona and initially provided coverage for over forty other shopping centers owned by Westcor and located in Arizona.

Upon completion of construction, both FlatIron Crossing and the Village (collectively the "FlatIron Properties") were added to the 2000 Policy. Of the properties insured under the 2000 Policy, the FlatIron Properties represent Westcor's largest valued location with a collective value of over $100 million.

The 2000 Policy included an endorsement entitled Earth Movement Extension which provided that the 2000 Policy was extended "to insure against direct physical loss to covered property on or at covered location(s) caused by earthquake ... or earth sinking, rising, or shifting." The 2000 Policy also included an endorsement defining that property which was not covered under its terms, including pavements and roadways. The 2000 Policy included another endorsement, however, that deleted the specific paragraph from the former endorsement that omitted pavements and roadways from coverage.

In anticipation of the expiration of the 2000 Policy on December 31, 2000, Travelers sent a written notice to Westcor in October of 2000 that included the following provision:

**( ) DECREASE IN COVERAGE**

> Your renewal policy will provide coverage on a more restrictive basis than you (sic) present contract. The following reason accounts for this coverage decrease.
> ...
> (X) Other - **Coverage change to reflect the NEW Travelers**

2

**Manuscript Policy.**

In December of 2000, Charles Verfurth ("Verfurth") of Travelers sent a renewal proposal for the 2000 Policy to Erick Johnson ("Johnson") of Accordia of Arizona ("Accordia"), Westcor's insurance broker. This proposal contained the following provision:

> **Coverage's (sic) and Limits:**  Special Causes of Loss as defined by the New Travelers Manuscript Policy. Same Limits and Coverage's (sic) as expiring. Sample policy to be provided.

Accordia responded to Verfurth's correspondence with a renewal form stating "Renew [the 2000 Policy] as expiring." Accordingly, Travelers issued Westcor a new policy for the 2001 year (the "2001 Policy"). Westcor did not receive a copy of the 2001 Policy, however, until sometime after March of 2001.

The 2001 Policy did not include the Earth Movement Extension endorsement from the 2000 Policy. Instead, the 2001 Policy included an endorsement entitled Earthquake, Volcanic Eruption, Landslide, and Mine Subsidence. This endorsement extended coverage to losses resulting from the specific occurrences listed in its title but not to other types of earth movement. Likewise, the 2001 Policy did not include the two endorsements from the 2000 Policy addressing coverage for pavements and roadways. Instead, the 2001 Policy included a property coverage form that defined outdoor property to include pavements and roadways and provided that outdoor property was only covered for damages resulting from 6 listed causes of loss which did not include earth movement.

In anticipation of the expiration of the 2001 Policy on December 31, 2001, Travelers sent a written notice to Westcor in October of 2001 that stated as follows:

3

> In accordance with state notice requirements, we are providing you with advance notice of a change affecting your renewal policy(ies). Please consult your agent or broker for guidance in reviewing changes pertaining to any important information contained in this notice. ....
> ...
> Changes in coverage to reflect the NEW Travelers Manuscript Policy.
> ...

Westcor renewed the 2001 Policy and was issued a new policy for the 2002 year (the "2002 Policy"). The 2002 Policy contained the following provision:

> **D. EXCLUSIONS**
>
> 1.  [Travelers] will not pay for loss or damage caused directly or indirectly by any of the following. ....
>
>     **a. EARTH MOVEMENT**
>
>     (1) Any earth movement including earthquake ... the expansion or contraction of soil due to the presence of moisture or water, or the lack thereof, or any other sinking, rising, shifting or movement, all whether naturally occuring or due to man made or other artificial causes.

Again, like the 2001 Policy, the 2002 Policy did not include the Earth Movement Extension endorsement from the 2000 Policy but instead included the Earthquake, Volcanic Eruption, Landslide, and Mine Subsidence endorsement. The 2002 Policy also did not include the two endorsements from the 2000 Policy addressing coverage for pavements and roadways but instead included the same property coverage form included in the 2001 Policy.

By letter dated October 6, 2003, Westcor notified Travelers of damage to the Village as a result of expansive soil conditions. By letter dated February 24, 2004, Travelers notified Westcor that there was no coverage for the damage to the Village based on exclusions in the 2002 Policy for damages caused by earth movement and by faulty, inadequate or defective workmanship in the

design, construction or maintenance of the FlatIron Properties. Based on information subsequently obtained, Travelers now further asserts that there is no coverage for the damage to the Village based on the property coverage form included in the 2002 Policy which provides that outdoor property is only insured for certain, specified losses.

## II. Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

### III.  Analysis

Both Westcor and Travelers' motions for summary judgment raise the same central issue; that is, whether there is coverage under the terms of the insurance policies that Travelers issued to Westcor for the damage that occurred at the Village.  Determination of this issue requires a determination of the insurance terms that were in effect at the time of Westcor's claim. Determination of this issue in turn requires an analysis of applicable state laws and any notice requirements governing the changes in coverage that Travelers made to the terms of the 2000 Policy when it was renewed for 2001 and 2002.

Under both Colorado and Arizona law, an insurer may be required to provide notice to an insured when the insurance coverage provided under a policy will be decreased upon renewal. Specifically, Section 10-4-110.5(1), C.R.S., provides as follows:

> No insurer shall increase the premium unilaterally or decrease the coverage benefits on renewal of a policy of insurance that provides coverages on commercial exposures ... unless the insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in advance a notice, accompanied by the reasons therefor, stating the renewal terms and the amount of premium due.  If the insurer fails to furnish the renewal terms and the statement of the amount of premium due at least forty-five days prior to the expiration date of the policy, the insurer shall automatically extend the existing policy for a period of forty-five days and the premium for this extended period shall be prorated based on the premium applicable to the existing policy.  If the insurer fails to meet the requirements of this section prior to the expiration of the existing policy, the insurer shall be deemed to have renewed the insured's policy for an identical policy period at the same terms, conditions, and premium as the existing policy.

Section 20-1677(A), A.R.S., similarly provides as follows:

> An insurer shall mail or deliver to the named insured at the mailing address shown on the policy written notice of premium increase, change in deductible or reduction in limits or substantial reduction in coverage at least sixty days before the expiration date of the policy.  If the insurer fails to provide the sixty days' notice,

> the coverage provided to the named insured remains in effect until notice is given
> or until the effective date of replacement coverage obtained by the named insured,
> whichever occurs first.

Section 20-1671, A.R.S., however, limits the applicability of Section 20-1677 as follows:

> This article does not apply to any of the following:
> 1.  Life and disability insurance.
> ...
> 9.  Policies covering multistate location risks.
> ...

Since it is undisputed that the insurance policies that Travelers issued to Westcor cover both Colorado and Arizona locations, a determination of which state's laws applies dictates whether Travelers had a statutory duty to provide Westcor with notice of the subject changes that it made to the terms of the 2000 Policy upon renewal. In making this determination, I must apply Colorado's conflict-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941).

Colorado follows the principles set forth in the Restatement (Second) of Conflict of Laws (the "Restatement") in determining which state's laws apply in contract actions. *Farris v. ITT Cannon, a Div. of ITT Corp.,* 834 F. Supp. 1260, 1266 (D. Colo. 1993). In particular, Section 6 of the Restatement provides as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive
> of its own state, on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the
> applicable rule of law include: a.) the needs of the of the interstate and
> international systems, b.) the relevant policies of the forum, c.) the relevant policies
> of other interested states and the relevant interests of those states in the
> determination of the particular issue, d.) the protection of justified expectations, e.)
> the basic policies underlying the particular field of law, f.) certainty, predictability
> and uniformity of results, and g.) ease in the determination and application of the
> law to be applied.

Under these guidelines, Westcor first argues that I am bound to apply Colorado law in this case pursuant to Section 6(1) based on C.R.S. §10-4-113(1)(b). Section 10-4-113(1)(b) provides that the insurance commissioner has the authority to grant reasonable exemptions from the notice requirements set forth in Section 10-4-110.5 if an insurance policy issued in Colorado covers multistate locations provided that the exemptions do not apply with respect to covered properties located in Colorado. Even if this provision was generously interpreted as a choice of law statute, however, it would nonetheless be inapplicable here because the insurance policies in question were issued in Arizona.

Turning then to Section 6(2), Section 188(2) of the Restatement provides further guidance as to how its principles should be applied. Specifically, this section provides as follows:

> In the absence of a choice of law by the parties the contacts to be taken into account in applying the principles of § 6 to determine the applicable law to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract; and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
> **These contacts are to be evaluated according to their relative importance with respect to the particular issue.** (Emphasis added).

Many of the factors set forth in Sections 6 and 188 of the Restatement weigh in favor of applying Arizona law in this case. In particular, the subject insurance policies were issued in Arizona to entities that were principally located and doing business in that state. On the other hand, the property where the subject damage occurred is located in Colorado, thereby giving the State of Colorado a significant interest in having its laws applied in this case. This interest is demonstrated by the extensive laws that the State of Colorado has enacted to regulate insurance

practices within its borders.  Indeed, these laws were enacted to "promote the public welfare." C.R.S. §10-1-101.  In addition, as set forth in Section 188 of the Restatement, not all of the factors listed therein are to be given equal weight.  Rather, those factors that are central to the issue at hand are to be given paramount consideration.  Under these circumstances, I conclude that Colorado law is applicable to Westcor's claims relating to damages at the Village.  I further note that this result is consistent with Rule 19 of the Insurance Service Office, if applicable under the facts and circumstances of this case, because this rule recognizes that the law of the state in which the insured's largest valued location is located may be applied to multistate policies.

As set forth above, Travlers had a duty to provide Westcor with notice of all decreases in coverage upon renewal of the 2000 Policy pursuant to C.R.S. § 10-4-110.5(1).  Further, in order to comply Section 10-4-110.5(1), this notice had to state the reasons for the reduction in coverage and state the renewal terms.  The next question then is whether Travelers provided sufficient notice to Westcor of the subject changes in coverage upon renewal of the 2000 Policy for 2001 and 2002.

The first notice that Travelers sent to Westcor in October of 2000 stated that there was a "coverage change to reflect the NEW Travelers Manuscript Policy."  Although this statement was included under an unchecked section titled "Decrease in Coverage," it is nonetheless deficient under Section 10-4-110.5(1) as it fails to identify the renewal terms to Westcor.  Specifically, this notice does not advise Westcor that its coverage for damages caused by earth movement and for damages to pavements and roadways was being reduced.  Further compounding the inadequacy of this notice is the renewal proposal that Travelers subsequently sent to Westcor which stated that the renewed policy would have the same coverages "as expiring," as well as the fact that Travlers

9

did not provide a copy of the policy with the reductions in coverage until some months later. The second notice that Travelers sent Westcor in October of 2001 likewise merely stated there were "changes in coverage to reflect the NEW Travelers Manuscript Policy" and failed to set forth the renewal terms. Moreover, there is nothing in this notice to indicate that the referenced changes were decreases in coverage. Again then, the second notice is deficient under Section 10-4-110.5(1).

Since Travelers failed to provide the requisite notice regarding the subject changes in coverage upon renewal of the 2000 Policy, then Section 10-4-110.5(1) further dictates that the terms of this policy remained in effect when it was renewed for 2001 and 2002. This result is consistent with the common law and the general rule of construing ambiguities in insurance policies in favor of the insured. *See Gov. Employees Ins. Co. v. United States,* 400 F.2d 172, 175 (10th Cir. 1968) (recognizing general rule that an insurer is bound by greater coverage in earlier policy where renewal policy is issued without calling insured's attention to reduction in coverage); *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003) (unique nature of insurance contracts and relationship between insurer and insured mandate that courts construe ambiguous provisions against the insurer and in favor or providing coverage). The next issue is whether Westcor is entitled to judgment as a matter of law that there is coverage under the terms of the 2000 Policy for the damage that occurred at the Village.

Despite the lengthy pleadings filed in connection with the motions for summary judgment, the parties have devoted little attention to the issue of the specific damage that has occurred at the Village. Westcor does concede, however, that trial will be necessary to establish the exact locations of the subject damage and the amount of loss associated with such damage. Travelers

argues that trial is also necessary to determine the cause of the damage to the Village and when that damage occurred. I agree based on the limited evidence before me.

Westcor relies on the report of an engineer retained by Travelers and the correspondence from Travelers' denying coverage for Westcor's claim to establish that there is no triable issue regarding the cause of the damage to the Village. Both of these documents, however, reference both earth movement and construction/design defects as possible causes for this damage. I therefore cannot conclude as a matter of law that the cause of the damage at issue was covered under the terms of the 2000 Policy in whole or in part. I likewise cannot conclude as a matter of law that the damages at issue occurred during the coverage period based on the limited evidence that Westcor has presented regarding when the first signs of damage were observed. Moreover, the causation and timing issues are at least somewhat intertwined with the unresolved issue of where the subject damage occurred. Under these circumstances, Westcor is not entitled to summary judgment on these issues.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendant Travelers' Motion for Summary Judgment [Doc # 30] is DENIED.

2. Plaintiff Westcor's Motion for Partial Summary Judgment [Doc # 32] is GRANTED that the terms of the 2000 Policy remained in effect through December 31, 2002 and DENIED in all other respects.

Dated: June   22  , 2006 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock

LEWIS T. BABCOCK, CHIEF JUDGE